Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | Ruben Castillo |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9478 | **DATE** | February 28, 2003 |
| **CASE TITLE** | Agrexco v. Benny's Farm Fresh et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Third Party Defendant's Motion for Summary Judgment;
Third Party Plaintiffs' Motion for Summary Judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial [set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] The cross-motions for summary judgment filed by third-party defendant, C.H. Robinson (#17-1), and defendants/third-party plaintiffs, Benny's Farm Fresh and Ron Pomerantz (#18-1), are **DENIED**. Status hearing before Judge Castillo set for 3/21/03 at 1:30 p.m. in courtroom 2319.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 3 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | 15 | 31 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| JHC | courtroom deputy's initials | 03 FEB 28 PM 3:07 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AGREXCO USA, LTD. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 01 C 9478 |
| ) | |
| BENNY'S FARM FRESH DISTRIBUTING ) | |
| CO., INC., a corporation; RONALD E. ) | JUDGE WILLIAM J. HIBBLER |
| POMERANTZ, an individual, ) | |
| ) | |
| Defendants/Third-Party Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| C.H. ROBINSON CO., a corporation, ) | |
| ) | |
| Third-Party Defendant. ) | |

DOCKETED
MAR - 3 2003

## MEMORANDUM OPINION AND ORDER

This action arises out of a dispute between the parties over the amount due for two shipments of red and yellow peppers purchased by Defendants/third-party plaintiffs Benny's Farm Fresh Distributing Co., Inc. and its President, Ronald E. Pomerantz, (collectively "Farm Fresh"), from plaintiff Agrexco USA, Ltd. ("Agrexco"), for resale to third-party defendant, C.H. Robinson Company ("Robinson"). Agrexco filed suit against Farm Fresh pursuant to the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a *et seq.*, to recover the balance due on the purchase contract. Farm Fresh then filed a third-party complaint against Robinson, asserting a violation of PACA and breach of contract, and seeking payment for the commodities it ordered from Agrexco and sold to Robinson. Agrexco and Farm Fresh subsequently settled and dismissed their case; however, the third-party complaint between Farm Fresh and Robinson remains.

Robinson now moves for summary judgment, contending that Farm Fresh provided

31

non-conforming goods and therefore Robinson was entitled to deduct the damages it sustained from the full contract amount. In response, Farm Fresh has cross-filed for summary judgment on the ground that Robinson has not proven its damages. For the following reasons, the Court denies each of the pending motions for summary judgment.

## STANDARD OF REVIEW

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment bears the initial burden of submitting affidavits or other evidentiary material to show the absence of a genuine material issue of fact and that judgment as a matter of law should be granted in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The party opposing the motion must then go "beyond the pleadings" and "designate specific facts showing that there is a genuine [material] issue for trial" in order to avert summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where both parties have moved for summary judgment, the Court "considers the merits of each cross-motion separately and draws all reasonable inferences and resolves all factual uncertainties against the party whose motion is under consideration." *ABC v. Maljack Prods., Inc.*, 34 F. Supp. 2d 665, 669 (N.D. Ill. 1998). Each movant must individually satisfy the requirements of Rule 56 in order to prevail. *Id.*

## STATEMENT OF FACTS

Farm Fresh is a middleman in the distribution of perishable agricultural commodities. On March 23, 2001, David Duggan, an agent of Farm Fresh, negotiated with Tina Hoehne, a

sales representative in Robinson's Chicago branch office, a contract to sell various quantities of red and yellow peppers. Robinson agreed to purchase 400 red and 300 yellow peppers for shipment on Friday March 23, 2001, and 500 red and 300 yellow peppers for shipment on Sunday March 25, 2001. Robinson agreed to pay $36,550 to Farm Fresh for both shipments.[1]

Farm Fresh purchased the peppers from Agrexco, who then shipped them directly from New York to Standard Fruit and Vegetable ("Standard") locations in Dallas and Atlanta.[2] On Tuesday March 27, 2001, Hoehne informed Duggan that Standard representatives in Dallas and Atlanta told her the peppers had arrived and were too large. Hoehne claims that during their negotiations for the peppers, she had requested, and Duggan had agreed to provide, peppers sized to fit 28 to 30 per box. Both Hoehne and Duggan aver that the size requirement was a term of the contract. However, the order confirmation contains no such notation. Farm Fresh disputes the existence of an agreement with respect to the size of the peppers, pointing to an email dated March 28, 2001, that Duggan wrote to an Agrexco representative:

> I am having a little problem with the weekend shipments of peppers. The customer is complaining that the peppers are too large. The shipment from Sunday which went to Atlanta was inspected, it showed 3% decay in the red peppers & an average count of 21 peppers per case. The yellow peppers showed no decay & an average of 22 peppers per case. **I know we can not guarantee number of peppers per case**, but Fred had

---

[1] Farm Fresh's President, Ron Pomerantz, avers in his affidavit that the total purchase price for the peppers was $36,550. The invoices Pomerantz cites to, though, reflect total charges of $36,750.

[2] Pomerantz also claims in his affidavit that Robinson picked up the shipments of peppers in Chicago, but does not state the basis for his conclusion. Even though Robinson specifically countered in its response that the peppers had been shipped to Atlanta and Dallas, respectively, not Chicago, Pomerantz made no attempt in his reply to refute Robinson's averments. Because "affidavits must be made on personal knowledge," and it is not clear that Pomerantz actually possesses such knowledge as to where the peppers were sent after they left New York, the Court will disregard his statements on this matter. *See Malec v. Sanford*, 191 F.R.D. 581, 584-85 (N.D. Ill. 2001).

-3-

stated the red peppers were running about 28 peppers per case with an occasional case with 22 per case. The peppers which left on Friday were also very large, I do not have a specific count. I was wondering if you can help me in this situation. . . . (emphasis added).

(Farm Fresh Ex. 2, Attachment 5.)

In any event, Duggan says that after Hoehne complained about the size of the peppers, he asked her to have a federal inspection conducted. Hoehne subsequently faxed Duggan two inspection certificates. The first report details an inspection in Dallas, Texas on March 27, 2001 at 1:15 p.m., of approximately 300 cartons of red and yellow peppers. The identification number on the report is "49109," which is identical to the customer number listed for Robinson on Farm Fresh's Order Confirmation for the March 23 shipment. The report notes some decay on the peppers and, significantly, an average of 21-22 peppers per carton. The second report details an inspection in Forest Park, Georgia, on March 27, 2001 at 9:10 a.m., of approximately 800 cartons of sweet peppers. The identification number on the report is "209152," which is identical to the customer number listed for Robinson on Farm Fresh's Order Confirmation for the March 25 shipment. The report notes some quality defects and decay and, significantly, an average of 21-22 peppers per carton. Hoehne claims that after reviewing those reports, Duggan agreed that the peppers were too large, and accordingly allowed Robinson's purchaser to sell the peppers that could not be repacked.

Robinson claims it was forced to deduct $18,204 from the sale price to its customer because the peppers Farm Fresh provided did not conform to the agreed-upon size requirements. With respect to proof of damages, Robinson submits two letters from Standard dated May 17, 2001, stating that on March 26, 2001, Standard received red and yellow peppers that did not meet the specifications of what was ordered, and lists a return of $10,500 and

-4-

$11,718 on each shipment, for a total of $22,218. Farm Fresh filed this action to recover the balance on the purchase orders that Robinson has refused to pay.[3]

## ANALYSIS

PACA comprehensively regulates the produce industry, providing, among other things, "that perishable agricultural commodities received by a [broker][4], as well as the proceeds from sales of those commodities, are held in trust for the benefit of unpaid suppliers until full payment has been made." *Patterson Frozen Foods v. Crown Foods Int'l*, 307 F.3d 666, 669 (7th Cir. 2002); 7 U.S.C. § 499e(c)(2). "The idea behind the PACA trust is to aide the seller to recover proceeds from delinquent purchasers and vests the district courts of the United States with jurisdiction to hear 'actions by trust beneficiaries to enforce payment from the trust'." *United Potato Co. Inc. v. Burghard & Sons, Inc.*, 18 F. Supp. 2d 894, 898 (N.D. Ill. 1998); 7 U.S.C. § 499e(c)(5).

Although PACA provides the basis for federal question jurisdiction over Farm Fresh's third-party complaint against Robinson, the crux of this dispute is the state law breach of contract claim.[5] Indeed, Farm Fresh and Robinson each contend that the other party failed to fulfill the terms of their agreement. Farm Fresh asserts breach of contract as a cause of action,

---

[3] Although Farm Fresh billed Robinson for $36,750, and Robinson has paid $18,296, leaving a balance of $18,454, Farm Fresh seeks to recover only $18,204.

[4] "The term 'broker' means any person engaged in the business of negotiating sales and purchases of any perishable agricultural commodity in interstate or foreign commerce for or on behalf of the vendor or the purchaser. . . ." 7 U.S.C. § 499a(b)(7). Both Farm Fresh and Robinson qualify as brokers for purposes of PACA.

[5] The Court asserts supplemental jurisdiction over that claim pursuant to 28 U.S.C. § 1367(a).

while Robinson pleads breach of contract as an affirmative defense. Under Illinois law,[6] to prevail on a breach of contract claim, the complaining party must establish (1) the existence of a valid and enforceable contract; (2) its performance of the contract; (3) breach of the contract by the other party; and (4) resulting injury. *Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 487 (7th Cir. 2001). Both Robinson and Farm Fresh move for summary judgment, arguing that no material factual disputes exist and that each is entitled to judgment as a matter of law. The parties agree that Robinson's request to purchase, and Farm Fresh's agreement to sell, two shipments of red and yellow peppers for $36,550 created a valid and enforceable contract. However, the remaining elements of the breach of contract claims are contested by both sides. The Court will address the parties' arguments in turn.

### A. Robinson's Motion for Summary Judgment

Robinson essentially claims that Farm Fresh sent nonconforming goods, and as a result, it was entitled to withhold a portion of payment in order to off-set its damages. *See, e.g.,* 810 ILCS 5/2-717 ("The buyer on notifying the seller of his intention to do so may deduct all or any part of the damages remaining from any breach of the contract from any part of the price still due under the same contract."). In accordance with Illinois law, Robinson asserts Farm Fresh's breach of contract as an affirmative defense. *See Carroll v. Acme-Cleveland Corp.*, 955 F.2d 1107, 1115 (7th Cir. 1992) ("Illinois regards a plaintiff's breach of contract as an affirmative defense"). As the party raising the affirmative defense, Robinson bears the burden of proving it. *Wasserman v. Autohaus on Edens, Inc.*, 202 Ill. App. 3d 229, 559 N.E.2d 911, 916 (1st Dist. 1990).

---

[6]Neither side disputes the applicability of Illinois law. Farm Fresh is an Illinois corporation, and Robinson has an Illinois office and conducts business here. Further, the sales transaction at issue was negotiated in Illinois.

Consequently, to prevail on summary judgment, Robinson must establish that as a matter of law it satisfies each element of a breach of contract cause of action. *See, e.g., Sherman v. Rokacz,* 182 Ill. App. 3d 1037, 538 N.E. 2d 898, 902-03 (1st Dist. 1989).

As the Court has already noted, the existence of a contract, the first element, is undisputed. With respect to the second element, Robinson's performance, it contends that the appropriate payment was rendered for the peppers Farm Fresh supplied. Whether Robinson has proven as much turns in large part on the Court's resolution of the third and fourth elements, breach by Farm Fresh, and resulting injury to Robinson, respectively.

### 1. *Breach by Farm Fresh*

Robinson argues that Farm Fresh breached their contract by providing peppers that were too large. In response, Farm Fresh insists that size was not a term of the contract; and thus, a triable issue of fact has been raised that precludes summary judgment in Robinson's favor. However, the mere existence of a factual dispute is not enough to defeat a motion for summary judgment. Rather, the Court must find the factual dispute is "genuine," meaning that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 247.

In support of its motion for summary judgment, Robinson submitted affidavits from Duggan and Hoehne that attest to Hoehne's specific request on behalf of Robinson for peppers that would fit 28 to 30 per box, and Duggan's promise as a representative of Farm Fresh to fulfill that requirement.[7] Farm Fresh, in response, points to Duggan's March 28, 2001 email to an Agrexco representative in which he complains about the size of the peppers shipped to

---

[7]Farm Fresh does not contest Robinson's argument that Duggan acted as an agent for the company when he negotiated with Hoehne.

Robinson, but then concedes that "I know we can not guarantee number of peppers per case."

Farm Fresh argues that Duggan's admission contradicts his averment of an agreement with Hoehne concerning pepper size, but the Court disagrees. The email certainly shows that Duggan may have been aware that *Agrexco* could not guarantee the number of peppers per case; however, it says nothing about Duggan's conversations with or promises to *Robinson* regarding the number of peppers per case. In fact, immediately following his notation that pepper size could not be guaranteed, Duggan writes that he had been told peppers were running 28 per case, with an occasional shipment of 22 per case. It is therefore plausible that Duggan indeed promised Hoehne the pepper size she required, *i.e.*, fitting 28-30 per case, based on Agrexco's statements concerning the amount of peppers generally contained within a case. Thus, the Court does not believe that a reasonable jury would be persuaded that the number of peppers per case was not a term of the parties' contract. As such, the Court finds Farm Fresh has failed to demonstrate a genuine issue of material fact on the question of whether it agreed to supply peppers of a particular size.

But that finding does not end the Court's inquiry on the breach question because Farm Fresh also argues that Robinson has not presented sufficient evidence to show that the peppers supplied did not conform to the alleged size requirement. Robinson relies upon the two government inspection reports dated March 27, 2001, of peppers received in Dallas, Texas, and Forest Park, Georgia, indicating an average of 21-22 peppers per case. Farm Fresh agrees the reports are admissible to show the size of the peppers, but claims Robinson has not shown that the peppers inspected were the ones sold by Farm Fresh to Robinson. Robinson points out that the identification number on each inspection report is identical to the customer number on Farm Fresh's corresponding confirmation order for each shipment. However, Farm Fresh

-8-

contends that there is no evidence that the inspectors actually knew or verified that the peppers inspected were indeed the same ones sold by Farm Fresh to Robinson.

Pursuant to 7 U.S.C. § 499n(a), official inspection certificates for fresh fruits and vegetables shall be received by all courts of the United States, in all proceedings under this chapter as prima-facie evidence of the truth of the statements therein contained. Notwithstanding this statutory presumption, Farm Fresh could still challenge the authenticity of the inspection reports. *See Maine Potato Growers, Inc. v. Butz*, 540 F.2d 518, 523 (1st Cir. 1976); 7 U.S.C. § 499n(b) (imposing criminal penalties for issuing fraudulent certificates of inspection). But it does not. Instead, Farm Fresh maintains that because the inspectors allegedly did not verify the source of the peppers prior to the inspections, Robinson cannot establish a connection between the peppers inspected in Texas and Georgia, and the peppers Farm Fresh sold to Robinson which were delivered to Texas and Georgia. We reject this argument as disingenuous.

The inspection reports attest to the fact that two shipments of red and yellow peppers, identified by the numbers "49109" and "209152," respectively, were inspected on March 27, 2001, in Texas and Georgia. Coincidentally, the two shipments of red and yellow peppers that Robinson purchased from Farm Fresh were received in Texas and Georgia on March 27, 2001, and, significantly, the identification numbers on the inspection certificates exactly match the customer numbers listed on invoices from Farm Fresh to Robinson for the shipments. Although Farm Fresh attempts to characterize these occurrences as mere happenstance, the Court is persuaded that the inspection reports substantiate Robinson's contention that Farm Fresh provided non-conforming peppers. Farm Fresh offers nothing more than speculation that the peppers described in the inspection certificates may not have been its goods.

However, to avoid summary judgment, Farm Fresh must present specific facts that show a genuine issue of material fact, which it has not done. *Anderson*, 477 U.S. at 250.

As such, Farm Fresh has failed to sustain its burden on summary judgment of identifying a genuine issue of material fact as to whether it breached the contract.

## 2. *Resulting Injury*

Nevertheless, Robinson is not entitled to summary judgment in its favor because disputed issues of fact surround the fourth element of the breach of contract claim, resulting injury. Although it is now clear that Farm Fresh breached the contract by tendering goods that did not conform to the contract, Robinson has not shown that it was "forced to deduct $18,204 from its sale price to its customer as a result of the peppers' failure to meet the size requirements." (Hoehne Aff. ¶ 5.)

To prove injury, Robinson relies exclusively on two damage reports prepared by Standard. However, those documents, which are dated almost two months after the shipment was received, state only that on March 26, 2001 (one day *prior* to the arrival of the shipments), Standard received peppers that did not meet the specifications of what was ordered and that *Standard's* total return on each shipment was $11,718, and $10,500, respectively. Robinson fails to presents evidence, though, of the amount of losses, if any, that *Robinson* sustained as a result of receiving non-conforming products. Indeed, Robinson does not explain how and why it decided to deduct $18,204 from the purchase price, particularly when Standard's damage reports reflected a total return of $22,218. More significantly, though, the damage reports do not specifically state that the lower returns resulted solely from pepper size. The investigation reports also note some decay on the goods. Whether pepper size or decay or some other factors caused the peppers to have a lower resale value is simply not clear.

"The party claiming injury from breach must establish the amount of damages." *Transp. & Transit Assoc., Inc. v. Morrison Knudsen Corp.*, 255 F.3d 397, 401 (7th Cir. 2001). Although "[t]he demonstration need not be precise . . . the [injured party] must have a sensible basis for its claim." *Id.* Without some further explanation of its damages calculation, the Court cannot determine if Robinson was in fact entitled to withhold a portion of payment from Farm Fresh. Therefore, Robinson has not sustained its burden of coming forward with enough evidence to establish its entitlement to judgment as a matter of law. *See Celotex*, 477 U.S. at 323.

In light of Robinson's failure to prove that the deduction from the purchase price in the amount of $18,204 was warranted, it also cannot demonstrate performance of its duties under a valid contract requiring payment of $36,550 for the goods purchased. Consequently, triable issues of fact remain that preclude the entry of summary judgment in its favor. *See Anderson*, 477 U.S. at 248.

### B. Farm Fresh's Motion for Summary Judgment

Farm Fresh is not entitled to summary judgment either because, as the Court has already found, it has not demonstrated the second element of its own breach of contract claim, performance of its duties under a valid contract to sell red and yellow peppers of a certain size. In Illinois, "the rule is well-settled that a party cannot sue for breach of contract without alleging and proving that he has himself substantially complied with all the material terms of the agreement." *George F. Mueller & Sons, Inc. v. Northern Ill. Gas Co.*, 32 Ill. App.3d 249, 336 N.E.2d 185, 189 (1st Dist. 1975). The evidence of record establishes that Farm Fresh promised peppers that would fit 28-30 per box, but, according to the USDA inspection reports, the peppers supplied were too large. Farm Fresh, as a cross-movant for summary judgment,

-11-

therefore has not met its burden of demonstrating that judgment as a matter of law should be entered in its favor.

## CONCLUSION

Given that neither party has shown that summary judgment is appropriate here, both motions are denied.

**IT IS SO ORDERED.**

RUBEN CASTILLO, DISTRICT JUDGE

DATED: February 28, 2003